Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3125 | **DATE** | 11/12/2002 |
| **CASE TITLE** | Adams Street Joint Venture vs. John J. Harte | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion to dismiss Harte's counterclaims for lack of subject matter jurisdiction [22-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 13 2002 | |
| | Notified counsel by telephone. | date docketed | 48 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | NOV 13 2002 | |
| RO | courtroom deputy's initials | 02 NOV 12 PM 3:53 / date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADAMS STREET JOINT VENTURE, an Illinois partnership; HOLLUB HEATING, INC., an Illinois corporation; MID-LAKES DISTRIBUTING, INC., an Illinois corporation; SHORELINE GARAGE CO., an Illinois corporation; and HELENE HOLLUB, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN J. HARTE, an individual, <br><br> Defendant. | No. 02 C 3125 <br><br> Judge Ruben Castillo <br><br> DOCKETED <br> NOV 1 3 2002 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Adams Street Joint Venture ("Adams"), Hollub Heating, Inc. ("Hollub"), Mid-Lakes Distributing, Inc. ("Mid-Lakes"), Shoreline Garage Co. ("Shoreline"), and Helene Hollub have filed suit against their former employee, John J. Harte, for allegedly violating Title 9 of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961-1968, as well as for common law fraud, breach of fiduciary duty, conversion, and constructive trust. In response, Harte has filed counterclaims against two of the plaintiff corporations: Counts I and II are breach of contract actions against Mid-Lakes, and Count III is a breach of contract action against Shoreline. Currently before the Court is Plaintiffs' motion to dismiss Harte's counter-claims, pursuant to Federal Rule of Civil Procedure (12)(b)(1), on the ground that this Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). For the reasons stated below, the motion to dismiss is denied. (R. 22-1.)

1

# RELEVANT FACTS

Plaintiffs Adams, Hollub, Mid-Lakes, and Shoreline are Illinois businesses in which Michael and Marilyn Hollub, husband and wife, are the sole shareholders, or in the case of Adams, partners. For more than thirty years, John J. Harte was employed by the plaintiffs as their accountant. In this capacity, he managed several of the plaintiffs' bank accounts and was a signatory on Mid-Lakes' reserve and/or checking accounts. Harte received a salary from Mid-Lakes and from approximately 1998 to September 5, 2001 also served as its president. Plaintiffs filed suit against Harte because they believe, in short, that over a period of four years, Harte wrongfully diverted more than $400,000 of their funds for his personal use.

Against these charges, Harte has raised a number of affirmative defenses, including unclean hands, laches, and estoppel. (R. 20, Def.'s Answer at 41.) In addition, he has filed three counterclaims of his own. First, Harte claims that on September 5, 2001, in a meeting with Michael and Marilyn Hollub, he was asked to resign from his post as President of Mid-Lakes. In exchange, he was promised a severance package that included a salary, use of the company car, insurance benefits, and a cell phone. The benefits contained in the severance package were to last until April 30, 2002. Harte accepted the offer and resigned from Mid-Lakes effective September 5, 2001. Count I alleges that Mid-Lakes abruptly terminated Harte's benefits on November 14, 2001, and that, in doing so, it breached its severance contract with him. As a result, Harte now seeks $41,000 in damages from Mid-Lakes.

Second, Harte claims that Mid-Lakes owes him full bonuses for the years ending on April 30, 2000 and April 30, 2001. Count II alleges that Mid-Lakes failed to pay him these amounts; consequently, Harte now seeks $43,000 from Mid-Lakes. Finally, in Count III, Harte has sued Shorelines for breach of contract. Specifically, Harte claims that in or about September 2000, Michael Hollub agreed to pay him for time and money spent working on Shoreline's behalf, dating back to 1998. Harte has valued this amount, which includes more than 1,000 hours of work time, at $106,000. Harte now seeks $106,000 from Shoreline.

The plaintiffs seek to dismiss Harte's three counterclaims on the ground that this Court lacks proper subject matter jurisdiction over them. Plaintiffs argue that none of Harte's claims are sufficiently related to the initial complaint to form part of the same case or controversy under Article III of the U.S. Constitution. (R. 26, Pl.'s Reply at 3.) The plaintiffs assert that because defendant's counterclaims are not related, they fall outside the scope of jurisdiction granted to federal district courts by 28 U.S.C. § 1367(a). Currently before this Court is Plaintiffs' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. N.W. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). All well-pleaded facts are taken as true, and all inferences are drawn in favor of the non-movant. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). The motion will be granted only if it appears beyond doubt that the non-movant can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993).

Rule 12(b)(1) allows for dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As a party seeking to invoke this Court's jurisdiction, Harte has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936); *Jaslowski v. Cellco P'ship*, No. 02 C 3601, 2002 WL 31085092, at *5 (N.D. Ill. Sept. 17, 2002). Without evidence raising a fact question as to subject matter jurisdiction, the court's inquiry is limited. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). The court must simply ask whether the complaint's allegations, construed in a light most favorable to the counter-plaintiff, are sufficient to support subject matter jurisdiction. *Id.*

**ANALYSIS**

Harte's counterclaims are state law claims. To remain in federal court, therefore, they must fall within this Court's supplemental jurisdiction. The Court's supplemental jurisdiction is governed by 28 U.S.C. § 1367.

Prior to the passage of § 1367 in 1990, counterclaims were classified as either compulsory or permissive. Fed. R. Civ. P. 13(a) & (b). Claims that arose out of the same "transaction or occurrence" on which the opposing party's claim was based were compulsory and thus were asserted in the same proceeding. Permissive counterclaims, by contrast, required an independent basis for federal jurisdiction. *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 384 (7th Cir. 1996).

With the passage of § 1367, Congress revised the scope of the district courts' supplemental jurisdiction and, in so doing, moved away from the old nomenclature of permissive and compulsory counterclaims. *Channell*, 89 F.3d at 384; *see also, Crawford v. Equifax Payment Servs., Inc.*, No. 97 C 4240, 1998 WL 704050, at *5 (N.D. Ill. Sept. 30, 1998) ("[t]he distinction between permissive and compulsory counterclaims is no longer meaningful."). Now the relevant inquiry is whether the state law claims to be heard in federal court "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "This language now permits district courts to maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims 'are so related to' the original claims . . . ." *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997).[1]

---

[1] The Seventh Circuit still makes occasional use of the terms "permissive" and "compulsory." *See, e.g., Oak Park Trust and Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000). It appears that when used, however, these terms correspond to claims that fall within (compulsory)

4

The Seventh Circuit has interpreted the language of § 1367(a) to require only a "loose factual connection between the claims." *Ammerman v. Sween*, 54 F.3d 423, 434 (7th Cir. 1995). Additionally, supplemental jurisdiction is generally extended when "the state and federal claims derive from a common nucleus of operative facts." *Id.* (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999). In *Rothman*, a case with facts analogous to ours, the liberal requirements of § 1367(a) were easily met. Rothman, a law school graduate, filed a claim against Emory University School of Law for allegedly violating the Americans with Disabilities Act ("ADA"). Rothman claimed that Emory's discrimination throughout his law school career created a hostile environment for him. Emory filed a counterclaim for breach of contract because Rothman refused to repay his student loans. Rejecting Rothman's claim that the court should not have retained jurisdiction over Emory's claim, the Seventh Circuit found the breach of contract charge to be "so related to" Rothman's original claims "that they form[ed] the same case or controversy." *Rothman*, 123 F.3d at 454. Even though Rothman's failure to repay occurred after he graduated from law school, a time period irrelevant to the original complaint, the fact that Rothman believed Emory's violation of the ADA excused him from repayment justified trying both claims together.

Similarly, in *Rodriguez v. Ford Motor Credit Co.*, plaintiffs claimed that Ford Motor pursued a policy of marking up finance charges for Hispanic customers only, thereby violating the Equal Credit Opportunity Act. *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002

---

or outside of (permissive) § 1367(a). *Id.* ("As a permissive counterclaim, it is outside the supplemental jurisdiction" of 28 U.S.C. § 1367(a)). Moreover, the Seventh Circuit has written elsewhere that "the distinction between permissive and compulsory counterclaims served an important function when every assertion of pendant jurisdiction was of doubtful propriety, because not supported by statute. . . . Now that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute to define the extent of their powers." *Channell*, 89 F.3d at 385.

5

WL 655679 (N.D. Ill. Apr. 19, 2002). In turn, Ford Motor filed a counterclaim, seeking payment for the breached underlying finance contracts at issue. Citing *Channell*, the court found that Ford Motor's claims were related enough to exercise supplemental jurisdiction, even though "a counterclaim for recovery of a defaulted debt relating to the underlying contract 'falls within the outer boundary of § 1367(a).'" *Rodriguez*, 2002 WL 655679, at *6.

The critical issue in this case is whether Harte's breach of contract charges are "so related to" Plaintiffs' civil RICO, fraud, breach of fiduciary duty, and other claims that together they form the same case or controversy. Counts II and III of Harte's counterclaim both center around Harte's failure to receive payment for the work he did prior to his resignation from Mid-Lakes in 2001. Resolving these counts necessarily involves an inquiry into Harte's behavior during his period of employment with the plaintiffs. Moreover, assuming such a contract for bonuses and payment did exist, as the Court is required to do when evaluating this motion to dismiss, *Dawson v. Gen. Motors Corp.*, 977 F.2d at 372, it is possible that Mid-Lakes and Shoreline believed Harte's allegedly wrongful diversion of money excused them from honoring their contractual obligations.

Both the plaintiffs' and the defendant's claims require the Court to examine the nature of the relationship between Harte and his employers. Whether Harte performed his duties or violated them by misappropriating company funds is relevant to the civil RICO claim, the breach of fiduciary duty claim, and to Harte's claims that he was not paid for his work. Not only is there a "loose factual connection" between the original claim and the counterclaim, but it appears that both stem from a "common nucleus of operative facts." *See Ammerman v. Sween*, 54 F.3d at 434.

Indeed, with the exception of Count I of the counterclaim, both sides' allegations rest on Harte's conduct as an employee during the few years leading up to his September 2001 resignation from Mid-Lakes. On the other hand, Harte's Count I alleges breach of a severance package that was not arranged until September 2001 and allegedly breached in November 2001. Although this allegation falls outside the time period most relevant to the Plaintiffs' complaint, Mid-Lakes has asserted that Harte committed yet another unauthorized transfer of funds on November 1, 2001. (R. 12, Am. Compl. at 12.) Moreover, the factual circumstances surrounding Michael Hollub and Harte's severance agreement certainly overlap with the facts underlying the plaintiffs' claims.

Next, Mid-Lakes and Shoreline rely heavily on the idea that their complaint sounds in tort law and thus could not possibly be related to Harte's breach of contract claims. Yet this Court has found no case law to suggest that the tort-contract distinction is relevant when analyzing supplemental jurisdiction. In fact, the Seventh Circuit in *Rothman* held that supplemental jurisdiction existed over Emory University's breach of contract claim, even though Rothman's complaint asserted only statutory violations. *Rothman*, 123 F.3d at 450. The Seventh Circuit apparently has not deemed this distinction important, and the plaintiffs have not proven otherwise.

Finally, even though a counterclaim may satisfy the requirements of § 1367(a), a district court may decline to extend jurisdiction over the counterclaim if it falls into one of four exceptions provided in § 1367(c). 28 U.S.C. § 1367(c). Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original

jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

None of these four conditions is present in this case. Harte's breach of contract claims do not raise any "novel or complex" issues of state law, nor do they substantially predominate over the plaintiffs' claims. *Cf. Rodriguez*, 2002 WL 655679 at *6 (finding that defendant's counterclaims were "basic breach of contract claims that neither raise any novel, complex issues of state law nor predominate over plaintiffs' claims"). Since Harte's counterclaims invoke supplemental jurisdiction under § 1367(a) and do not warrant dismissal under § 1367(c), this Court will exercise jurisdiction over them.

## CONCLUSION

For these reasons, we deny the plaintiffs' motion to dismiss Harte's counterclaims for lack of subject matter jurisdiction. (R. 22-1.)

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: November 12, 2002